**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

In the Matter of the Detention of:

S.Z.,

                Appellant.

No. 84147-5-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — S.Z. appeals a 14-day involuntary commitment order. She argues that neither the trial court nor the prosecutor advised her that a 14-day involuntary treatment order would lead to the loss of her firearm rights. We agree. Because neither the court nor the prosecutor complied with the obligation under RCW 71.05.240(2) to notify S.Z. orally and in writing of the effect of involuntary commitment on her constitutionally protected firearm rights, we reverse and remand to vacate the 14-day involuntary commitment order.[1]

---

[1] S.Z. also argued that the State presented insufficient evidence to support the trial court's conclusion that S.Z. was gravely disabled. Because we reverse on the notice issue, we do not address the sufficiency of the evidence.

I.

On May 2, 2022, S.Z. was detained under the Involuntary Treatment Act (ITA), ch. 71.05 RCW.  A designated crisis responder referred S.Z. for an evaluation and treatment.  S.Z. was transported to Telecare North Sound Evaluation and Treatment Facility in Skagit County.

While S.Z. was detained, Telecare North Sound staff petitioned for 14-day involuntary treatment, alleging that S.Z. was gravely disabled as a result of a mental disorder.  The probable cause hearing occurred on May 6, 2022.  S.Z. was appointed a public defender and waived her appearance at the hearing.  Neither the court nor the prosecutor informed S.Z., orally or in writing, that she would lose her firearm rights if she were involuntarily committed, or that this could be avoided if she made a good faith effort to voluntarily participate in treatment.

At the hearing, S.Z.'s counsel moved to dismiss the petition for failure to properly notify S.Z. of losing her firearm rights.[2]  The trial court found that the petition was deficient on the firearm notice but because S.Z. was also served with an initial notice of rights before detention, any error was harmless.  The trial court denied S.Z.'s motion to dismiss.  The trial court found that S.Z. was gravely disabled and ordered that S.Z. be committed for 14 days for involuntary treatment.

S.Z. appeals.

---

[2] S.Z.'s counsel also argued that the petition was insufficient because it failed to state facts that a less restrictive alternative would serve the best interest of S.Z.  S.Z. has not appealed this issue and therefore we do not address it.

II.

S.Z. argues that reversal and vacation of the order of commitment is required because neither the trial court nor the prosecutor provided oral and written notice of the loss of her firearms rights as required by RCW 71.05.240(2). We agree.

The ITA authorizes Washington courts to commit an individual for up to 14 days if, by a preponderance of the evidence, the petitioning party proves that such person, "as the result of a behavioral health disorder, presents a likelihood of serious harm, or is gravely disabled." RCW 71.05.240(4)(a). The State's authority to commit people under the ITA is "strictly limited." In re Det. of D.W., 181 Wn.2d 201, 207, 332 P.3d 423 (2014). Involuntary commitment is a "massive curtailment of liberty," thus, courts must strictly construe the statutes regulating these proceedings. Humphrey v. Cady, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972); D.W., 181 Wn. 2d at 207.

Under RCW 71.05.240(2):

> If the petition is for mental health treatment, the court or the prosecutor at the time of the probable cause hearing and before an order of commitment is entered shall inform the person both orally and in writing that the failure to make a good faith effort to seek voluntary treatment as provided in RCW 71.05.230 will result in the loss of his or her firearm rights if the person is subsequently detained for involuntary treatment under this section.

"There is no ambiguity in the statute" and it requires that notice come "both orally and in writing before a finding of commitment." In re Det. of T.C., 11 Wn. App. 2d 51, 62-63, 450 P.3d 1230 (2019) (emphasis added).

Here, the only written notice that S.Z. received about the potential loss of her firearm rights was a "notice of rights" form she received when she was first detained. The notice stated, "[i]f detained on the grounds that you present a likelihood of serious

-3-

harm to yourself, others, or property, your right to have a firearm in your possession or control will be suspended for a period of six months." The notice was signed by a designated crisis responder.

There are at least two issues with the initial written notice. First, the notice incorrectly stated that S.Z.'s firearm rights would be revoked for only six months. The 6-month revocation applies to those who are involuntarily detained for 120 hours. RCW 71.05.182(1). An involuntarily commitment for mental health treatment for 14 days, "will result in the loss of his or her firearm rights." RCW 71.05.240(2). Because of this curtailment of rights, the person must be given an opportunity to make a good faith effort to seek voluntary treatment. RCW 71.05.240(2).

Second, the initial notice was signed by a designated crisis responder. As discussed in T.C., a petition for commitment signed by a medical professional or a designated crisis responder, does not comply with the statutory requirement that the firearms notice come from the court or the prosecutor. 11 Wn. App. 2d at 62; RCW 71.05.240(2). The initial notice provided to S.Z. did not satisfy the requirements of RCW 71.05.240(2).

The petition for 14-day involuntary treatment did not mention S.Z.'s firearm rights. During the probable cause hearing, S.Z.'s counsel argued that the petition was deficient because it failed to notify S.Z. of a firearm ineligibility if she did not consent to treatment. The trial court stated:

> So, on the firearm piece, I think [S.Z.'s counsel] is correct that that is not in the petition. I do think that if they are served with a notice of rights that does advise them of that along with the petition, then I would consider that to be a harmless error. Although the petition probably should be tuned up.

S.Z.'s counsel then pointed out that the language included in the notice only applies to the initial petition but that if someone is "detained for 14 days because they refuse to engage in voluntary treatment, the loss is permanent until it's restored." The trial court responded, "[a]ctually, I did a little homework on this, and I believe the right to own or possess is automatically restored in six months. I could be wrong, but we just had a little workshop on that, and I believe that's true." The trial court was incorrect. Under RCW 9.41.047(3)(a),[3] a person who has been involuntarily committed for mental health treatment must petition the superior court to have his or her right to possess a firearm restored.

After further argument, the trial court ruled:

> So I'm going to agree that the petition is deficient regarding the firearm notice. I don't believe that is enough to dismiss a petition only because there are other rights advised when people are detained that include that language. And I realize that's a constitutional issue, so I'm going to just say that that was harmless or it was not willful. And I'm going to deny the motion to dismiss, although I would point out that we should clean up the petitions on that.

As the court in T.C. found, the failure to give proper notice under RCW 71.05.240(2) infringes on a constitutional right and thus any error is not harmless. T.C., 11 Wn. App. 2d at 65-66.

The State argues that S.Z. invited error by waiving her appearance at the probable cause hearing and was "not available to accept the warning provided by statute." But neither the written notice that S.Z. received nor the trial court's oral statements properly provided notice under RCW 71.05.240(2). Nor did the trial court or

---

[3] RCW 9.41.047(3)(a) states, in relevant part: "A person who is prohibited from possessing a firearm, by reason of having been involuntarily committed for mental health treatment under RCW 71.05.240, . . . may, upon discharge, petition the superior court to have his or her right to possess a firearm restored."

prosecutor provide a writing to S.Z.'s counsel with the proper language. Thus, even if oral notice to S.Z.'s counsel would suffice under the statute—which by its clear language it does not—S.Z. was not informed, before the order of commitment was entered, that a failure to make a good faith effort to seek voluntary treatment would result in the loss of her firearm rights.

We reverse and remand to vacate the 14-day involuntary commitment order.[4]

_Mann, J._

WE CONCUR:

_____                    _Smith, A.C.J._

---

[4] Involuntary civil commitment cases are not moot on appeal even after the commitment period has ended because such commitments may constitute evidence in subsequent proceedings. See In re Det. of M.K., 168 Wn. App. 621, 629, 279 P.3d 897 (2012); RCW 71.05.245(3). The State does not argue otherwise.